IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Patrick Zane Gray, #216316 ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> Jon Ozmint, and Warden of ) <br> Broad River Correctional Institution, ) <br> ) <br> Respondents.[1] ) <br> ) | Civil Action No.8:08-3773-HFF-BHH <br><br> **REPORT AND RECOMMENDATION** <br> **OF MAGISTRATE JUDGE** |

The petitioner, a state prisoner, seeks relief pursuant to Title 28, United States Code, Section 2254. This matter is before the Court on the respondent's motion for summary judgment. (Dkt. # 8.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

The petitioner brought this habeas action on November 10, 2008.[2] On February 11, 2009, the respondent moved for summary judgment. By order filed February 12, 2009, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On April 14, 2009, the petitioner filed a response opposing the respondent's summary judgment motion.

---

[1] A prisoner's custodian is the only proper respondent in a habeas corpus action. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434-35 (2004). Therefore, as the Warden is the only proper respondent in a habeas action, Jon Ozmint should be dismissed from this action. Accordingly, the undersigned will refer to the Warden as the only respondent throughout this report.

[2] This date reflects that the envelope containing the petition was date stamped as having been received on November 10, 2008, at the Broad River Correctional Institution mailroom. (Pet. Attach.) *Houston v. Lack*, 487 U.S. 266 (1988)(holding prisoner's pleading is considered filed when given to prison authorities for forwarding to the district court).

## I. PROCEDURAL HISTORY/FACTS

The petitioner is currently incarcerated at the Broad River Correctional Institution. In May 2004, the petitioner was indicted for the following offenses: obtaining controlled substances by fraud, first degree burglary, and grand larceny. The petitioner was originally represented at his preliminary hearing by Sally Henry. After the preliminary hearing, the petitioner was represented by David Farrell. On January 27, 2005, the petitioner pled guilty to the charges before the Honorable Kenneth Goode. In return for the plea, the State dropped seven other pending charges, and agreed that any sentences on the drug and larceny convictions would run concurrent to the sentence given for the burglary. (PCR App. 10-11; 14-16.) Judge Goode sentenced the petitioner to twenty-two years for the burglary, ten years for the larceny, and five years for the drug charge. (PCR App. 23; 111; 118; 121.) The petitioner did not file a direct appeal.

On May 13, 2005, the petitioner filed an application for post-conviction relief ("PCR") raising the following grounds for relief: 1) Involuntary plea and 2) Ineffective assistance of counsel. (PCR App. 26.) Then, on February 10, 2006, the petitioner through counsel, William Bert Brannon and Mary Francis Jowers, filed an amendment to his application for PCR raising the following issues:

> A. I was told by my lawyer that I would not receive more than 15 years.
>
> B. My lawyers, Sally Henry and David Farrell, failed to investigate, develop, and present mitigating evidence at all stages on this case, including at the preliminary hearing and guilty plea.

(PCR App. 33.) On July 10, 2006, the petitioner through his counsel filed a second amendment to his application for PCR raising the following issues:

> A. I was told by my lawyer that I would not receive more than 15 years.

> B. My lawyers, Sally Henry and David Farrell, failed to investigate, develop, and present mitigating evidence at all stages on this case, including at the preliminary hearing and guilty plea.
>
> C. The findings related to the fingerprint evidence at the scene were not accurately or appropriately represented to me.

(PCR App. 36.)

On November 27 and November 29, 2006, an evidentiary hearing was held before the Honorable Dianne S. Goodstein. (PCR App. 44.) The petitioner was present and represented by appointed counsel William Bert Brannon. On March 5, 2007, Judge Goodstein denied the petitioner PCR. (PCR App. 95.) The petitioner filed an appeal.

On July 19, 2007, the petitioner filed a petition for a writ of certiorari raising the following issue: Did the PCR court err in failing to find counsel ineffective for not conducting an independent investigation into the fingerprint evidence? On May 30, 2008, the South Carolina Supreme Court denied the petition for writ of certiorari. The remittitur was sent down on June 17, 2008.

## II. **APPLICABLE LAW**

### A. Summary Judgment Standard

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the

disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

**B. HABEAS STANDARD OF REVIEW**

Since the petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir.1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or

> 2. resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2).

Federal habeas corpus relief may not be granted unless the relevant state-court adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings," 28 U.S.C.A. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410.

## C. EXHAUSTION AND PROCEDURAL BAR

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

I. Exhaustion

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254 , which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

> (b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or

5

> (B) (I) there is either an absence of available State corrective process; or
>
> (ii) circumstances exist that render such process, ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court. The United States Supreme Court has consistently enforced the exhaustion requirement.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. SCAR 207; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). The second avenue of relief is by filing an application for PCR. S.C. Code Ann. § 17-27-10 et seq. A PCR applicant is also required to state all of his grounds for relief in his application. S.C. Code Ann. § 17-27-90. Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

6

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977); *Richardson v. Turner*, 716 F.2d 1059 (4th Cir. 1983).

ii. Procedural bypass

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, *Smith v. Murray*, 477 U.S. 527, 533 (1986).  Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, (i.e., direct appeal, appeal from PCR denial) and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time.  Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote . . . not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial

7

as the docket will allow, and while the attention of the appellate court is focused on his case. *Reed v. Ross*, 468 U.S. 1, 10-11 (1984).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim.  Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim.  *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

iii. Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner before this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court.  A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice).  In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *Matthews v. Evatt*, 105 F.3d 907 (4th Cir. 1997)(citing *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991); *Teague v. Lane*, 489 U.S. 288,297-98 (1989); and *George v. Angelone*, 100 F.3d 353,363 (4th Cir. 1996).

iv. Cause and Actual Prejudice

The requirement of exhaustion is not jurisdictional and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. *Granberry v. Greer*, 481 U.S. 129, 131 (1987).  In order to have such claims considered, a petitioner must show sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. 478.  A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an

external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.*

Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. He is required to prove that specific errors infected the trial and were of constitutional dimensions. *United States v. Frady*, 456 U.S. 152 (1982).

### III. DISCUSSION

The petitioner contends that trial counsel was ineffective for failing to vigorously pursue or investigate allegedly exculpatory fingerprint evidence because an officer testified at the preliminary hearing that fingerprints found at the crime scene did not match the petitioner's prints. The petitioner also contends that counsel was ineffective for advising the petitioner to reject a plea offer of fifteen years so that this fingerprint evidence could be used to negotiate a better deal.

Initially, the undersigned notes that the respondent contends the second issue is procedurally barred as it was not raised in the petitioner's PCR appeal. In his PCR appeal, the petitioner raised the issue of whether the PCR court erred in holding that trial counsel was not ineffective for failing to conduct an independent investigation into the fingerprint evidence. The respondent contends that this issue differs from whether trial counsel was ineffective for advising the petitioner to reject the plea. The undersigned declines to find this issue procedurally barred as it was encompassed in the issue raised on appeal.

Ineffective assistance of counsel claims may be asserted in limited circumstances where the petitioner has entered a plea of guilty. A guilty plea generally precludes the petitioner from challenging defects in the process which occurred prior to the plea. He "may

9

only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson,* 397 U.S. 759, 771 (1970); *Tollett v. Henderson,* 411 U.S. 258, 267 (1973). When such a claim is raised, the voluntariness issue is subsumed within the claim of effectiveness of the attorney's assistance. *Hill v. Lockhart,* 474 U.S. 52, 56 (1985).

In order to prevail on a claim of ineffective assistance of counsel pertaining to a guilty plea, a petitioner must show that his lawyer's performance was incompetent, i.e., the first prong of the *Strickland* test. Under this prong, counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland,* 466 U.S. at 691. The prejudice prong of the *Strickland* test is modified and the petitioner must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill,* 474 U.S. at 59. "This is an objective inquiry, and dependent on the likely outcome of a trial had the defendant not pleaded guilty." *Meyer v. Branker*, 506 F.3d 358, 369 (4th Cir. 2007). If, however, there exists no reasonable probability that a possible defense would have succeeded at trial, the alleged error of failing to disclose or pursue it cannot be prejudicial. *Savino v. Murray,* 82 F.3d 593, 599 (4th 1996) (*citing Hill*, 474 U.S. at 59).

The following facts were set forth during the guilty plea. The undersigned notes that the petitioner agreed these facts were accurate at the guilty plea. (App. 17.)[3]    On December 29, 2003, the Sheriff's Department was called to a home in Lexington County. (App. 12.) A woman stated that as she was leaving her house, she saw the petitioner in

---

[3] Further, at the PCR hearing, the petitioner testified that he answered truthfully at the plea hearing and he did not dispute anything or want to change any of his answers. (App. 61.)

10

front of the house on the highway. She called her daughter who was still in the house to let her know that someone was in the driveway in front of her house. (App. 12-13.) Within thirty minutes, someone had used a brick to break a window and was walking around the house. The daughter confronted the petitioner at the front door. The petitioner told her that he had lost his baseball and then he fled. (*Id.*)

The police began to search for the petitioner. The petitioner was found 200 yards from the house behind another house. (*Id.*) He was identified by the mother and daughter and was arrested. A plastic bag containing a large amount of money, $10, 200, was found on the petitioner. (*Id.*) Nearby where the petitioner was arrested, the police also found some jewelry. (App. 13-14.) Shortly thereafter, the police received a report from another homeowner who reported that someone had broken into his home, used his saw to break into a safe, and had stolen $10,200 and the same jewelry which was found near the petitioner. (App. 12-16.)

Prior to his guilty plea at the preliminary hearing, an officer, Detective Blassingame, testified that there were fingerprints on the safe that did not match the petitioner's prints. (App. 52; 63.) However, during the guilty plea, the petitioner learned that this was incorrect and that there was no fingerprint evidence. (App. 55; 70-71.)[4] The petitioner argues that had his trial counsel investigated the fingerprint evidence, he would have not pled guilty and insisted on going to trial. (App. 59.) Further, the petitioner contends that trial counsel was ineffective for rejecting a 15-year plea deal. The petitioner asserts that Judge Kinard had agreed to sentence him to fifteen years unless they could identify the fingerprints as

---

[4]Apparently, the detective had mixed up the warrant numbers between the cases when testifying as to fingerprints. (App. 70; 83-91.)

11

belonging to someone else, but trial counsel turned down the deal.  (App. 153-54; 56-59.)  The petitioner instead was sentenced by Judge Goode to 22 years.

At the PCR hearing, trial counsel testified that after he was retained, the petitioner told him about the testimony at the preliminary hearing that the fingerprints from the safe did not match the petitioner's prints.  (App. 63.)   Trial counsel stated the original plea offer before Judge Kinard was for a plea to burglary and larceny in the safecracking case with the other charges to be dismissed, but the petitioner really wanted a sentence less than fifteen years, which is the minimum for first degree burglary.  The petitioner then told counsel there was a co-defendant involved and he wanted to use that to try to get a better deal. (App. 66.) The assistant solicitor agreed that if they could match the fingerprints to a co-defendant identified by the petitioner, then the offer would be reduced to second degree burglary.  (*Id.*)

Trial counsel testified that he discussed with the petitioner that if Judge Kinard would agree to a sentence of less than fifteen years, the petitioner would take that, but if not, the petitioner would wait until Judge Goode came into the circuit.  Trial counsel testified that they felt Judge Goode would be more favorable as far as sentencing because he was from Fairfield County like the petitioner. (App. 65-68.)  Trial counsel testified that they discussed the matter with Judge Kinard, but Judge Kinard stated the best he could do was fifteen years on a burglary first charge.  So, trial counsel stated that they decided to wait on Judge Goode and also see what happened with the fingerprint issue.  (App. 68-69.)

Trial counsel testified that the petitioner told him Richard King was the co-defendant, and claimed that King had burglarized the house while the petitioner was the lookout and afterwards King gave all of the stolen items to the petitioner.  Trial counsel testified that eventually the case report came back and there were no fingerprints that had  been lifted from the safe.  Thus, they went forward with the plea and  the solicitor had agreed to honor

12

the previous deal of dismissal of the other charges and concurrent sentencing. (App. 69-71.)

The PCR court rejected the petitioner's claim, finding trial counsel's testimony more credible than the petitioner's, and concluding that counsel was reasonable in relying on informal contact with the assistant solicitor in getting the fingerprint evidence. The PCR court found no evidence that the petitioner would have insisted on trial had he earlier found the absence of exculpatory fingerprint evidence, especially given the strong evidence against the petitioner and his prior record.[5] The court further credited trial counsel's testimony that the petitioner had agreed he was only going to plead before Judge Kinard if Judge Kinard was willing to go lower than fifteen years. (App. 100-01.)

First, the undersigned notes that the lack of a specific, affirmative showing of any exculpatory evidence leaves this claim purely speculative. The record establishes that there was no fingerprint evidence and that the detective was erroneous in testifying that there was such evidence. Other than conclusory allegations, the petitioner has not offered any evidence to the contrary.

The petitioner alleges in his response to the respondent's summary judgment motion that "there was fingerprint evidence that indicated that someone else committed the crime."[6] (Pet'r's Mem. Opp. Summ. J. Mot. at 3.) The petitioner further states that "the existence or non-existence of the fingerprint evidence has still not been completely resolved" and he would have insisted on going to trial if he had been "better informed concerning the fingerprint evidence." (*Id.* at 3-4.) However, as stated above there is simply no evidence in the record that there was any exculpatory fingerprint evidence. Moreover, even if trial

---

[5]The petitioner had six prior burglary convictions. (App. 71.)

[6]The undersigned also notes that at best, even with any fingerprint evidence, the petitioner had admitted he was a co-defendant and acted as a lookout and not that he did not commit the burglary.

13

counsel's performance could in someway be deemed deficient for failing to vigorously investigate, the petitioner suffered no prejudice as a result of trial counsel's inaction. The petitioner was informed before he pled guilty that there was no fingerprint evidence. (App. 44; 59.) Therefore, he was fully informed prior to his plea.

Second, as for refusing the 15-year sentence from Judge Kinard, the petitioner testified that he was not even aware of the offer. (App. 57.) He also testified that he thought he could have gone to trial and not taken any kind of plea. (App. 59.) As noted above, trial counsel testified that he felt Judge Goode would be more favorable as far as sentencing because he was from Fairfield County like the petitioner. (App. 65-68.) Trial counsel testified that he discussed the matter with the petitioner and that that they decided to wait on Judge Goode and also see what happened with the fingerprint issue. (App. 68-69.) The PCR court found trial counsel more credible and there is no basis in the record to overturn the findings of the state court with regard to this issue. *Evans v. Smith,* 220 F.3d 306, 312 (4th Cir. 2000).

Reviewing the record, the undersigned concludes that the petitioner has neither overcome the strong presumption that the conduct of counsel fell within a wide range of reasonable professional assistance nor shown that any deficiencies in counsel's performance prejudiced his defense. *Strickland,* 466 U.S. at 689-694. Accordingly, the PCR court's decision was not contrary, nor an unreasonable application of *Strickland.* Thus, this ground is without merit.

## IV. **CONCLUSION**

Wherefore, it is RECOMMENDED that the Respondent's Motion for Summary Judgment (Dkt. # 8) be GRANTED; and the habeas petition be DISMISSED with prejudice.

IT IS SO RECOMMENDED.

                                                s/Bruce Howe Hendricks  
                                                United States Magistrate Judge

June 17, 2009  
Greenville, South Carolina

**The petitioner's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 10768
Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).